UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                    CASE NO. 12-10198

THOMAS GINES BENASCO and                      SECTION "B"
JOANNE MARIE BENASCO

    DEBTORS                                                       CHAPTER 7
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
ROBERT C. LEHMAN and
ROBERT C. LEHMAN, PLC

    PLAINTIFFS

VERSUS                                                       ADV. P. NO. 12-1028

THOMAS GINES BENASCO and
JOANNE MARIE BENASCO

    DEBTORS

## MEMORANDUM OPINION

This matter came before the court on March 4, 2013 as a trial on the complaint of the plaintiffs, Robert C. Lehman, in his individual capacity, and Robert C. Lehman, PLC (both referred to simply as "Lehman") against the debtors, Thomas and Joanne Benasco (the "Benascos") under 11 U.S.C. §§ 523(a)(2), (a)(4) and (a)(6), seeking a determination that the debt owed to Lehman is non-dischargeable under the Bankruptcy Code. For the reasons set forth below, the court holds that the debt is non-dischargeable under §§ 523(a)(2)(A) and (a)(4) of the Bankruptcy Code; the court dismisses the remainder of the complaint.

I.      **Background Facts**

There is no dispute as to most of the relevant facts. Lehman is an attorney who represented the Benascos in a claim against their insurance company for damages to their home from Hurricane Katrina. He was paid on an hourly basis by the Benascos for his services. Thereafter the Benascos wanted Lehman to pursue a claim against the insurance company for its bad faith in handling the damage claim. Lehman reluctantly agreed and the parties entered into a contingency fee contract providing for a 50% attorney's fee. When this claim against the insurance company was settled for $60,000, the insurer issued a check in only the debtors' names. The parties met on November 17, 2010 to execute settlement documents and distribute the proceeds of the settlement check. The debtors were supposed to bring their check for Lehman's fee to the meeting. They claim that they forgot to bring it. At the meeting Lehman released the $60,000 check to the debtors. They told him that they would mail him a check for $30,000, which was his fee under the contract they had entered into. Lehman testified that he released the check for the entire $60,000 to the Benascos because they had paid him in the past and he trusted them.

Lehman never received his $30,000, although he requested it several times from the debtors and was told it would be forthcoming. The debtors eventually signed a promissory note for $30,035.00, and made one payment on the note.[1] Lehman later sued the debtors in

---

[1] Promissory note at Trail Exhibit 8; Check in the amount of $1,776.24 dated January 13, 2011, Trail Exhibit 9. The debtors tendered a second check for $1,776.24 to Lehman on February 24, 2011, but its was returned for insufficient funds. Trial Exhibit 10. The extra $35.00 was for miscellaneous costs. Trial Exhibit 5.

state court obtaining a judgment in the amount of "$30,035.00, less a payment of $1,776.24, plus interest of 8% annually on the unpaid balance from January 15, 2011 until paid, plus costs of these proceedings."[2] The judgment also awarded Lehman attorney's fees of 25% on $28,258.76, the principal amount of the judgment.

There is no dispute that the Benascos converted Lehman's fee to their own use, owed Lehman $30,035, and never paid anything other than the one payment. The issue here is whether the debt falls into one of the categories of non-dischargeable debts found in section 523 of the Bankruptcy Code.

## II.  Legal Analysis

### A.  The debtors' collateral estoppel argument

The debtors argue that because Lehman obtained a state court summary judgment against them on the promissory note that they signed after they failed to pay Lehman, and because the issue of fraud or other grounds making the debt non-dischargeable under the Bankruptcy Code was not preserved in that state court suit, Lehman is now estopped from claiming fraud or the other non-dischargeability grounds in this adversary proceeding.[3] The debtors cite the Fifth Circuit Court of Appeals' decision in *In re Keaty,* 397 F.3d 264 (5th Cir. 2005) for this proposition. *Keaty*, however, held only that the requirement that an issue be actually litigated in state court did not mean that the state court had to actually conduct a full trial on the issue, and that a state court's summary judgment on the matter

---

[2] Judgment at Trial Exhibit 12.

[3] 11 U.S.C. § 523.

was sufficient for the bankruptcy court to find that a particular element of collateral estoppel had been met. Here, the issue of fraud or the other grounds for non-dischargeability were not raised in the state court proceeding, and Lehman had no obligation to raise or litigate that particular issue in order to get his judgment against the debtors on the note. The court finds that the debtors' collateral estoppel argument does not apply to these circumstances. As *Keaty* states:

> [T]he scope of collateral estoppel is circumscribed by the particularized findings of the state court. Thus, collateral estoppel applies in bankruptcy courts only if, *inter alia,* the first court has made specific, subordinate factual findings on the identical dischargeability issue in question–that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue– and the facts supporting the court's findings are discernable from that court's record.[4]

Here the state court made no findings whatsoever as to fraud or any of the other grounds for dischargeability before the court in this case. The court finds that neither *res judicata* (claim preclusion), collateral estoppel (issue preclusion), nor judicial estoppel bar Lehman's claims under § 523(a) of the Bankruptcy Code.

**B.     Section 523(a)(2)(A)**

As previously stated, Lehman makes claims of non-dischargeability under several subsections of section 523. The first, section 523(a)(2)(A), provides:

> (a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
>     (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>         (A) false pretenses, a false representation, or actual fraud,

---

[4] *In re Keaty*, 397 F.3d 264, 271 (5th Cir. 2005).

4

> other than a statement respecting the debtor's or an insider's financial condition.

Generally, debts falling within Section 523(a)(2)(A) are debts obtained by fraud "involving moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made."[5] In the past the Fifth Circuit has noted that the elements required to prove false pretenses or false representations are distinct from those required to prove actual fraud.[6] Now it is unclear whether this distinction has survived.[7] If the distinction does survive, the following are the standards of proof required. To prove false pretenses or false representations, the objecting party must prove that: (1) the debtor's representation was a knowing and fraudulent falsehood; (2) the falsehood must have been describing past or current facts; and (3) the falsehood was relied on by another party.[8] To prove actual fraud under Section 523(a)(2)(A), the objecting party must prove that: (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor relied on the representations; and (5) that the creditor sustained

---

[5] *In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005), *citing*, *In re Martin*, 963 F.2d 809, 813 (5th Cir. 1992).

[6] *In re Mercer*, 246 F.3d 391, 403 (5th Cir. 2001).

[7] *In re Acosta*, 2003 WL 23109775 at *13 (E.D. La. 2003), *aff'd*, 406 F.3d 367 (5th Cir. 2005).

[8] *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292-93 (5th Cir. 1995), *quoting*, *In re Allison*, 960 F.2d 481, 483 (5th Cir. 1992).

losses as a proximate result of the representations.[9]

Fraud can be based on any type of conduct calculated to convey a misleading impression; thus, it is not relevant whether the representation is express or implied.[10] A finding of fraud does not require an affirmative statement and may be predicated on a failure to disclose a material fact.[11] Bankruptcy courts have overwhelmingly held that a debtor's silence regarding a material fact can constitute a false representation actionable under Section 523(a)(2)(A).[12]

With respect to the third element for actual fraud, an intent to deceive can be inferred from a "reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation."[13] However, if the debtor made a representation that was untrue but was based on a justifiably honest belief that it was true, that does not rise to the level of an intent to deceive.[14]

---

[9] *In re Acosta*, 406 F.3d at 372, *citing*, *In re Mercer*, 246 F.3d at 403.

[10] *In re Acosta*, 2003 WL 23109775 at *13 n.166, *citing*, *In re Wyant*, 236 B.R. 684, 695 (Bankr. D. Minn. 1999).

[11] *In re Docteroff*, 133 F.3d 210, 216 (3d Cir. 1997).

[12] *In re Acosta*, 2003 WL 23109775 at *13, *citing*, *In re Docteroff*, 133 F.3d at 216; *In re Wyant*, 236 B.R. at 695.

[13] *In re Norris*, 70 F.3d 27, 30 n.12 (5th Cir. 1995), *quoted in*, *In re Acosta*, 406 F.3d at 372.

[14] *In re Acosta*, 406 F.3d at 372, *citing*, *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997).

Section 523(a)(2)(A) requires justifiable, not reasonable reliance.[15] As opposed to the objective reasonable man, justification is a subjective inquiry, depending on the particular plaintiff and the particular circumstances.[16] Justifiable reliance is gauged by an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case.[17] It is only where, under the circumstances, the facts should be apparent to one of the plaintiff's knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own.[18] Section 523(a)(2)(A) prevents the discharge of all liability arising from a debtor's fraudulent conduct, including attorney's fees, costs, and interest.[19]

Examining the evidence presented here at trial, the court finds that Lehman proved non-dischageability under § 523(a)(2)(A). The court examines the testimony using the factors stated above that prove actual fraud. At trial it was showed that the debtors made at least three separate statements to Lehman that satisfied the first three elements required by § 523(a)(2)(A); the debtors made representations that they knew were false at the time they

---

[15] *Field v. Mans*, 516 U.S. 59, 74-75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), *citing*, *In re Vann*, 67 F.3d 277 (11th Cir. 1995).

[16] *Field*, 516 U.S. at 70-71.

[17] *In re Vann*, 67 F.3d at 281.

[18] *Id.*

[19] *Cohen v. De La Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998).

made them, and the representations were made with the intent to deceive Lehman. First, the debtors were supposed to bring a check to the November 17, 2010 meeting for Lehman's fee, which they did not do because they claimed to have forgotten it. They then told Lehman at the meeting that they would mail him the check as soon as they got home. This did not happen either. All the events that transpired thereafter show that this was not just a promise to pay sometime in the future. The court finds that the debtors had no intention of sending Lehman a check when they told him they would at the meeting.[20] The debtors' bank statements showed that they wasted no time in depositing the check into their bank account,[21] yet they did not make any attempt to pay Lehman his fee for several months. Second, on November 29, 2010 Lehman contacted the Benascos and was told that they had been out of town and would put the check in the mail immediately.[22] Again, this was a falsehood in light of the subsequent events. No check was put in the mail. The debtors knew at that point that they did not have the funds to pay Lehman despite their assurance that they would send him a check.[23] Finally, on December 20, 2010 Mr. Benasco spoke to Lehman and promised that he would send a check to for the attorney's

---

[20] Although Mr. Benasco testified at trial that he had always intended to repay Lehman, the court, considering all the circumstances, did not find his testimony to be particularly credible.

[21] Trial Exhibit 13 at p. 79 showed the check was deposited in the debtors' personal account on November 17, the same day they met with Lehman.

[22] Trial Exhibit 12 at p. 51. Affidavit of Lehman.

[23] The debtors' bank statements show that by November 29, 2010, over $52,000 of the $60,000 check had already been withdrawn from the account. Trial Exhibit 13 at pp. 79-80.

fees within two weeks.[24] Mr. Benasco knew in December that he did not have the funds to pay Lehman in December as well.

The court finds that the debtors' representations was justifiably relied upon by Lehman; Lehman testified that he had known the debtors as their attorney for some time, that they had always paid him for his work in the past, and that he believed them when they told him that they had forgotten to bring a check to the meeting and would mail him a check as soon as they got home from the meeting. He testified credibly that the statements by the debtors induced him to give them the check, and he had no reason to believe they would not. Finally, the court finds that Lehman sustained losses as a proximate result of the representations.

### C. Section 523(a)(4)

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." In his post-trial brief, Lehman contends that the Benascos' actions constitute embezzlement or larceny.[25] Embezzlement and larceny are determined for bankruptcy purposes under federal common law, and are defined as follows: Embezzlement is the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come."[26]

---

[24] Trial Exhibit 12 at p. 51. Affidavit of Lehman.

[25] (P-30) at p.4.

[26] *In the Matter of Miller*, 156 F.3d 598, 602 (5th Cir. 1998) (*quoting In re Thurston*, 18 B.R. 545, 500 (Bankr. M.D. Ga. 1982).

Embezzlement differs from larceny in that the original taking of the property was lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking.[27] Lehman does not allege facts that would allow the court to find that the debtors committed larceny.

The Fifth Circuit Court of Appeals defines embezzlement as "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come."[28] Other courts have stated that the required elements of embezzlement are: 1) appropriation of funds for the debtor's own benefit by fraudulent intent or deceit; 2) the deposit of the resulting funds in an account accessible only to the debtor; and 3) the disbursal or use of those funds without explanation of reason or purpose.[29]

Here, the debtors were entrusted with funds that they then appropriated for their own benefit. The court must next look to whether the debtor did so with fraudulent intent or deceit. Lehman alleges that the debtors knew that they were having financial troubles, that they knew they had no funds left in their bank account, that they wrote out checks to cover their own bills in the amount of the entire $60,000 settlement check with no way left

---

[27] *In re Imbody*, 104 B.R. 830, 840 (Bankr. N.D. Ohio 1989); 4 *Collier on Bankruptcy* ¶ 523.10, at 523-76 (15th Ed. Rev. 2000).

[28] *Matter of Miller*, 156 F.3d 598 (5th Cir. 1998).

[29] *In re Whyte*, 487 B.R. 578 (Bankr. N.D.Ga. 2011); *In re Bryant*, 147 B.R. 507 (Bankr. W.D.Mo. 1992); 4 COLLIER ON BANKRUPTCY ¶ 523.10[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

to pay him the $30,000, which is all indicative of fraudulent intent. Lehman introduced the debtors' bank statements into evidence at trial.[30] These showed that the debtors in effect spent the money from the $60,000 settlement check immediately upon depositing it,[31] and that they did not have other funds from which to pay Lehman his $30,000 attorney's fee. Indeed the debtors do not contest that they did not have the money to repay Lehman once they deposited the check and spent the money. Nor do they contest that they spent the money on personal expenses.

The debtors clearly misappropriated Lehman's funds, and the court finds that they had the requisite intent so that their actions constitute embezzlement for purposes of § 523(a)(4). That the debtors immediately spent the money entrusted to them by Lehman to satisfy the debtors' personal obligations coupled with the fact that they had no expectation of any other funds becoming available to repay Lehman certainly is enough to support this finding. In a somewhat similar case a bankruptcy court has found non-dischargeability under § 523(a)(4) even though the debtors intended to restore the misappropriated funds to the creditor at a later date.[32] Despite their promises there is no real evidence that the debtors ever really intended to pay the $30,000 to Lehman. Thus, the court holds that the debtors' debt to Lehman is non-dischargeable under § 523(a)(4).

---

[30] Trial Exhibits 13 and 14.

[31] Mrs. Benasco checked the balance in the account daily and knew or should have known the account was already overdrawn.

[32] *In re Woodman*, 451 B.R. 31, 43-44 (Bankr.D.Id. 2011).

11

**D.    Section 523(a)(6)**

Lehman's last relied upon ground for non-dischargeability is § 523(a)(6), which exempts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity".  In the case of *In re Miller*, 156 F.3d 598 (5th Cir. 1998), the Fifth Circuit analyzed the elements of Section 523(a)(6) following the recent Supreme Court case of *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 978, 140 L.Ed.2d 90 (1998).  In *Miller*, the Fifth Circuit determined that the term "willful and malicious injury" is a single, unitary concept that is a single two-pronged test.[33]  The court held that an injury is "willful" where there is either an objective substantial certainty of harm or a subjective motive to cause harm."[34]  The Fifth Circuit further determined that an injury is "malicious" if it is "an act done with the actual intent to cause injury."[35]  Debts arising from recklessly or negligently inflicted injuries do not fall within Section 523(a)(6).[36]

Generally, this subsection is used to except from discharge claims related to torts and not to contracts.[37]  The injury that Lehman complains he sustained is not of the type usually addressed under § 523(a)(6).  "The classic case for application of the willful and

---

[33]  156 F.3d at 603.

[34]  *Id.*; *see also In re Keaty*, 397 F.3d 264, 270 (5th Cir. 2005).

[35]  *In re Keaty*, 397 F.3d at 270 (*citing In re Miller*, 156 F.3d at 606).

[36]  *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 978, 140 L.Ed.2d 90 (1998).

[37]  4 Collier on Bankruptcy ¶ 523.12[1] at p. 523-92.2 (15th ed. rev. 2006).

malicious injury exception to discharge under 11 U.S.C.A. § 523(a)(6) seems to arise when the debtor intentionally injures a creditor, and the creditor seeks to make non-dischargeable a judgment won in a state court tort action."[38] Cases involving injuries stemming from assault, the debtor's obligation to a former employee for sexual harassment, libel, fraudulent inducement of a patient to submit to surgery where the debtor represented himself to be a doctor, and injuries as a result of the debtor's drag racing, for example are typical of debts excepted from discharge under this subsection.[39] The court finds that the claim brought by Lehman is not of the type that is non-dischargeable under § 523(a)(6) and dismisses that portion of his complaint.

### III. Conclusion

The court finds that the debt owed to Lehman by the debtors is non-dischargeable pursuant to §§ 523(a)(2)(A) and (a)(4) of the Bankruptcy Code in the amount set forth in the state court judgment.

New Orleans, Louisiana, June 14, 2013.

*J. A. Brown*
Jerry A. Brown
U.S. Bankruptcy Judge

---

[38] AMJUR Bankruptcy § 3656 (citations omitted).

[39] *Id.*; *See e.g. Kawaauhau v. Geiger* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (doctor's negligence in the amputation of a patient's leg as a result of medical malpractice did not satisfy the "willful and malicious" element); *In re Miller*, 156 F.3d 598 (5th Cir. 1998) (where the injury was the misappropriation of proprietary information and misuse of trade secrets).